## No. 26012

### The People of the State of Colorado v. Terry Lee Lyles
(526 P.2d 1332)

Decided October 7, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Tennyson W. Grebenar, Assistant, for plaintiff-appellee.

Kathy P. Bonham, for defendant-appellant.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

Defendant Terry Lee Lyles was denied release from the Colorado State Hospital. This is an appeal from that

judgment. We need discuss only one of several issues since it requires reversal and remand for a new hearing.

I.

Defendant Lyles originally was charged with having committed aggravated robbery. He was found not guilty by reason of insanity, and committed to the Colorado State Hospital at Pueblo. Pursuant to Colo. Sess. Laws 1972, ch. 44, 39-8-116 at 231, the institution recommended that defendant be released from custody. The district attorney objected. After hearing to a jury in accordance with section 39-8-115, the defendant was denied his release.

Defendant did not testify. One of the witnesses called in his behalf was William H. Ross, employed by the State Hospital as a clinical psychologist and chief of the maximum security unit there. As part of his duties he chairs the "Hospital Disposition Committee," which reviews criminal commitment cases and recommends discharge or retention of patients. It was this advisory board which recommended defendant's release to the superintendent, who accepted its opinion.

During the trial Mr. Ross was allowed to give general opinions about defendant's mental condition. He was not allowed to give his professional opinion as to whether defendant suffers from a "mental disease or defect or abnormal condition." The trial court ruled that only a psychiatrist is qualified to testify to legal sanity. Mr. Ross was also forbidden to repeat what defendant had said about his future plans. The lower court ruled this to be impermissible hearsay. We disagree with both rulings.

II.

The qualifications of Mr. Ross as an expert clinical psychologist is not at issue here. That was conceded by opposing counsel, and so ruled by the court. So the question involved is not the competency of the witness, but the competency of the evidence sought to be introduced through him. *Spears Free Clinic and Hospital for Poor Children v. Maier,* 128 Colo. 263, 261 P.2d 489 (1953). Stated differently, the only issue for our determination is: to what may

Mr. Ross competently testify as an expert clinical psychologist employed by the state to evaluate the patients and their eligibility for release.

### III.

■ The test for insanity at the original trial, when a defendant is *confined,* is found in Colo. Sess. Laws 1972, ch. 44, 39-8-101 at 225:

"* * * 'A person who is so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act, or being able so to distinguish, has suffered such an impairment of mind by disease or defect as to destroy the will power and render him incapable of choosing the right and refraining from doing the wrong * * *.' "

The test for *release* from confinement is different. It is found in section 39-8-120:

"* * * '[T]he defendant has no *abnormal mental condition* which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future.' " (Emphasis added.)

Thus, the legislature has chosen to distinguish between the test in a criminal case for the verdict of not guilty by reason of insanity, and the test for release from a mental institution once it is suggested that commitment might safely be terminated.

This psychologist was not asked for a medical opinion about the defendant's sanity. Instead, he was asked to explain a *behavior pattern* within the statutory test for *release:* was defendant's mental condition such that he was likely to be a danger to himself or society.

Mr. Ross testified that, as chairman of the committee charged with recommending those for release, he uses the statutory test. It is his function to be familiar with that test, and to apply it when he makes a recommendation. It is the basis of the professional judgment he makes in the position he holds for the state, for behavioral explanation is in the psychologist's realm. *See* 1967 Perm. Supp., C.R.S. 1963, 108-1-2.

Mr. Ross was qualified by the court as an expert clinical psychologist. The application of the statutory test for release is within his expertise. With the proper foundation and questions, he may give his professional opinion as to whether a patient suffers from "an abnormal mental condition," since that is the statutory test. *See C. McCormick, Evidence* § 14 (2d ed. E. Cleary ed. 1972). Moreover, he may give the bases for his opinion. *Gavin v. Kniffen,* 82 Colo. 448, 261 P. 6 (1927). We follow the trend of authority in reaching this conclusion. *See Jenkins v. United States,* 307 F.2d 637 (D.C. Cir. 1962); *Hidden v. Mutual Life Insurance Co.,* 217 F.2d 818 (4th Cir. 1954); *People v. Davis,* 62 Cal.2d 791, 402 P.2d 142, 44 Cal. Rptr. 454 (1965).

## IV.

The People would have us hold that a qualified clinical psychologist may testify as an expert only about matters relating to psychological tests he administered. The statute is not that narrow. Colo. Sess. Laws 1972, ch. 44, 39-8-106 at 227, deals with examinations and reports. It provides for the services of a psychologist when advisable. He may conduct an examination and testify to any results which helped him form an opinion about defendant's mental condition. Nowhere is it indicated that such "examination" is restricted merely to "tests." On the contrary, it is broadened to include conversations and other vital evidence from the defendant, as well as "procedures" and "observation."

Mr. Ross tried to testify within the meaning of the statute. He, more than any other witness, had observed the defendant. He had talked with him several times, both formally and informally. He was in a good position to evaluate his mental state. He should have been allowed to do so. If "examination and report" is to mean only "test results," it is up to the legislature — not the courts — to restrict it.

## V.

During his conversations with defendant Lyles, Mr. Ross learned of his future plans. It appears from the record that these plans were part of the basis for his opinion. He was not allowed to repeat them in court. The judge ruled them hearsay.

Section 39-8-106(3) allows the psychologist, during an examination, to consider admissions and confessions of the defendant, as well as his medical and social history. The psychologist may testify in court to defendant's statements and reactions, if they helped him form his professional opinion. The legislature may fashion rules of evidence. The statute contains a specific exception to the hearsay rule.

■ Even if this were not so, the statements still were admissible under familiar rules of evidence. They were not offered for truth, but only to show defendant's state of mind. His hopes and plans for the future circumstantially and relevantly could show mental stability and ability to cope in society. Declarations offered for this purpose are not hearsay. *Prudential Insurance Co. v. Sommers,* 148 Colo. 212, 365 P.2d 544 (1961). Thus, under either the statute or case law, this defendant's out-of-court statements should have been allowed.

## VI.

■ We hold that unduly restricting the testimony of a qualified expert clinical psychologist under these circumstances was error such as to require a new hearing. Mr. Ross should have been permitted to give his expert opinion, and the reasons for it, within the meaning of the statute. Of course, the weight and credence given to his testimony is still for the jury. *People v. Hodge,* 186 Colo. 189, 526 P.2d 309; *Snook v. People,* 169 Colo. 95, 453 P.2d 806 (1969); *Dodge v. People,* 168 Colo. 531, 452 P.2d 759 (1969).

Accordingly, we reverse and remand for another hearing consonant with the views expressed herein.

MR. JUSTICE ERICKSON concurs in the result.