## No. 26781

### The People of the State of Colorado v. Robert M. Giles

(557 P.2d 408)

Decided December 13, 1976.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, E. Ronald Beeks, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Richard L. Davis, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The defendant appeals from a judgment of the Denver District Court, based on a jury verdict, that he is not elibible for release from commitment following a finding of not guilty by reason of insanity. We affirm the judgment.

The defendant was charged with kidnapping and assault with a deadly weapon. He entered pleas of not guilty and not guilty by reason of insanity and waived jury trial as to the insanity defense. In a trial to the court, he was found not guilty by reason of insanity at the time of the alleged crimes. He was committed to the State Hospital on January 30, 1970.

On June 10, 1974, the defendant commenced the proceeding which has culminated in this appeal by petitioning the Denver District Court for an examination to determine if he was eligible for release. The court immediately ordered the Superintendent of the State Hospital to conduct a release examination. That examination resulted in a letter stating the Superintendent's opinion that the defendant was not eligible for release.

At this point, the trial court appointed counsel for the defendant. Pursuant to the defendant's request, the court ordered an additional release examination to be conducted by a psychiatrist who was not a regular staff member of the State Hospital. The court delegated to the Superintendent of the State Hospital selection of the non-staff psychiatrist to conduct the examination. The private practitioner chosen had performed examinations as a consultant to the hospital. He concluded that the defendant was not eligible for release.

After these two examination reports were filed, the defendant requested a release hearing before a jury. This was granted with the result above mentioned.

I.

### STANDARD FOR DETERMINATION OF ELIGIBILITY FOR RELEASE

The defendant asserts that he has been denied due process of law because different legal standards were applied to: (a) find him not guilty by reason of insanity resulting in his commitment, and (b) find him not eligible for release or conditional release. The defendant argues that the test for release should be the same as the test for the finding of insanity which resulted in his commitment.

A finding of insanity results in commitment where the defendant, because of mental disease or defect at the time of the alleged crime, is

unable to distinguish right from wrong with respect to that act, or is unable to choose the right over the wrong. Section 16-8-101, C.R.S. 1973.[1] The statutory test for release or conditional release, after a commitment which results from a successful insanity plea, requires a finding that the defendant "has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future." Section 16-8-120, C.R.S. 1973.[2]

The defendant relies on *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). However, *Jackson* does not require that a state apply the same standard to govern release of one previously found not guilty by reason of insanity as it applied in determining that he was insane at the time of the offense.

*Jackson* involved a mentally defective deaf-mute with the intellectual level of a preschool child who was charged with two robberies involving a total of nine dollars. He was unable to read, write, or otherwise communicate, except through limited sign language. After a hearing, he was found *incompetent to stand trial* and committed to the Indiana Department of Mental Health until that Department should certify to the court that he was "sane." Unlike the instant defendant, Jackson was not found not guilty by reason of insanity.

Jackson's counsel, in a new trial motion, contended that there had been no evidence or finding that Jackson was insane, and that his commitment amounted to a life sentence because there was little if any possibility that his mental condition could be improved.

It was argued that Jackson should have been civilly committed, under a different statute, as a person who was "feeble-minded and . . . *not insane* or epileptic. . . ." Ind. Code 16-15-1-3 (1971)(emphasis added). By statute a special institution was provided for civilly committed "feeble-minded" persons. A patient thus civilly committed could be released whenever, in the Superintendent's judgment, the patient's condition justified release. There was no requirement that such a patient be certified to be "sane" as a prerequisite to release.

Jackson successfully contended in the United States Supreme Court that he had been denied equal protection of the laws by being required to prove he was *sane* as a prerequisite for release when any other "feeble-minded" person who had been confined through *civil* commitment procedures could be freed upon persuading the Superintendent that his mental and physical condition justified release. Moreover, the alternative civil

---

[1] Previously, Colo. Sess. Laws 1972, ch. 44, 39-8-101 at 225. Since the release petition in this case was filed before but tried after the December 31, 1974 effective date of C.R.S. 1973 (see § 2-5-124, C.R.S. 1973), Colo. Sess. Laws 1972, ch. 44, 39-8-101, *et seq.* at 225 is applicable to the substantive legal issues. The relevant statutes are the same in both compilations.

[2] Previously, Colo. Sess. Laws 1972, ch. 44, 39-8-120 at 232.

commitment hearing procedure was calculated to better protect against prolonged deprivation of liberty without due process.

The holding in *Jackson v. Indiana* is not applicable here. This defendant was not, like Jackson, found incompetent to stand trial.

■ Both the "right and wrong" and "irresistible impulse" tests of legal insanity refer to the defendant's mental condition *at the time* the alleged crime was committed.[3] Those tests are standards to aid in determining accountability for acts which constitute crimes when done by one who is of sound mind. A leading authority has stated that the issue to be determined at that time is essentially a moral one — whether the defendant was sufficiently aware of the wrongful nature of his act and adequately in control of his impulses to be held accountable for that act. *J. Macdonald, Psychiatry and the Criminal* 62 (3d ed. 1976).

■ Even though the statutory standard for the defense of insanity concerns itself solely with the defendant's mental state when the allegedly criminal conduct occurred, the defendant argues that he was denied due process by the trial court's refusal to apply that standard to govern his application for release more than four years after the time to which that standard refers. Section 16-8-101, C.R.S. 1973.[4] The statutory test for release following commitment after a successful insanity defense, however, concerns itself with the defendant's mental state at the time he seeks release. Section 16-8-120, C.R.S. 1973.[5] Its purpose is to determine whether a person who previously claimed he was criminally insane, and therefore not accountable for actions which otherwise would be crimes, should now be set free.

■ The test for release requires a finding, "That the defendant has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future." Section 16-8-120, C.R.S. 1973.[6] In our view the test is a fair and rational standard. Therefore, we hold that the trial court correctly rejected the defendant's contention that he was denied due process by failure to apply as the standard for release the same test applied to determine whether he was insane several years earlier when the alleged crime was committed.

## II.
### *EXAMINATION BY INDEPENDENT PHYSICIAN*

The defendant argues that it was prejudicial error for the trial court to allow the Superintendent to select the particular physician to perform

---

[3] It is noteworthy that the defendant here does not question the validity or constitutionality of these standards under which he was found not guilty by reason of insanity.

[4] Previously, Colo. Sess. Laws 1972, ch. 44, 39-8-101 at 225.

[5] Previously, Colo. Sess. Laws 1972, ch. 44, 39-8-120 at 232.

[6] Previously, Colo. Sess. Laws 1972, ch. 44, 39-8-120 at 232.

the second examination. He contends that this selection method not only violated the purpose of the statute — to obtain a second, independent opinion — but also violated the spirit and objective of the trial court's own order.

However, there is no showing that the defendant objected to the physician chosen until after his unfavorable recommendation became known. Having previously consulted at the State Hospital does not disqualify a doctor from being appointed by the court.

As to the contention that the method of selection violated the spirit and objective of the trial court's own order, we consider that the trial judge was in a better position to determine that than we. We find no prejudicial error in the procedure used to select the second examining physician.

## III.
### EVIDENCE AND INSTRUCTION ON DEFENDANT'S PRIOR VIOLENCE

The defendant contends that the trial court erred in admitting evidence and instructing the jury that the charges on which he was previously found not guilty by reason of insanity were kidnapping and assault with a dangerous weapon. He further asserts error in admitting evidence of his violent conduct while committed and during an escape from commitment.

In a release hearing, the scope of inquiry is necessarily broad. The jury must weigh the defendant's desire for freedom against the risk that, if released, he may harm himself or others. To require the jury to decide this issue in an informational vacuum would be unfair to both the defendant and the public. A jury charged with such a heavy responsibility is entitled to hear all competent evidence relevant to the ultimate issue of whether the defendant meets the legal standard for release. Obviously, this includes evidence of the defendant's psychiatric history, the circumstances leading to his insanity plea and the resultant commitment, his prognosis for recovery, and all other relevant facts.[7] Trial courts have broad discretion in ruling on these evidentiary matters. Here there was no prejudicial error either as to evidentiary rulings or the questioned jury instruction.

## IV.
### CONDITIONAL RELEASE EVIDENCE AND VERDICT FORM

The defendant claims the court erred in prohibiting him from questioning witnesses regarding treatment which would be available if a conditional release where granted and in refusing a tendered verdict form which

---

[7] *Cf. Garrison v. People*, 151 Colo. 388, 378 P.2d 401 (1963) (where defendant claimed insanity after death sentence but before execution, otherwise competent, relevant and material evidence of entire psychiatric history not inadmissible solely because it occurred in prior years); *Trujillo v. People*, 150 Colo. 235, 372 P.2d 86 (1962) (on trial of insanity plea, evidence of any abnormal conduct whether or not related to the offense charged may be relevant on mental condition).

would have allowed the jury to find the defendant eligible for conditional release.

■ Where the trier of fact finds the defendant eligible for release, the statute empowers the court to impose such terms and conditions on release as it "determines are in the best interests of the defendant and the community, and the jury shall be so instructed." Section 16-8-115(3), C.R.S. 1973.[8]

The trial court did instruct the jury that if it found the defendant eligible for release, "the Court may impose upon the defendant such terms and conditions as the Court may determine are in the best interests of the defendant and of the community." However, in the same instruction, the court told the jury that if the defendant violated any terms and conditions the court might impose, the court had no authority to send him back to the State Hospital.[9]

■ It is clear from the statute that the jury's function ends with its determination whether or not the defendant is eligible for release. The decision whether to impose conditions on release is solely for the court.

■ Obviously, where conditional release is appropriate, the terms and conditions must be tailor-made by the court to fit the individual case. It is the court, not the jury, which has the necessary experience and knowledge of available alternatives to perform this function. While the entire instruction on the subject of conditional release was superfluous, giving it did not constitute prejudicial error.

## V.
### EVIDENCE OF PSYCHIATRIC SOCIAL WORKER AND PSYCHIATRIST

■ The defendant asserts that it was reversible error to allow Samuel Jackson, a qualified psychiatric social worker, to state, over objection, his opinions: (1) that the defendant would be likely to be dangerous to himself, others and the community if released, and (2) that the defendant should not be moved to a less secure ward. Furthermore, it is claimed that the court erred in allowing this witness to testify about the defendant's history of assaultive misbehavior.

The challenged testimony was preceded by foundation evidence showing Mr. Jackson's training, qualifications and experience, as well as his contacts with the defendant while in charge of the defendant's hospital ward, in group therapy sessions, and otherwise.

---

[8] Previously, Colo. Sess. Laws 1972, ch. 44, 39-8-115(3) at 231.

[9] When the statutes were reenacted in 1972, the provision expressly authorizing the court to recommit a defendant for violating the conditions of his release was omitted. *Compare* C.R.S. 1963, 39-8-4(8) *with* Colo. Sess. Laws 1972, ch. 44, p. 225, *et seq.* Whether the trial court has implied or inherent power to enforce the conditions set out in its release order is an issue not raised or decided in this case.

Moreover, prior to giving the challenged testimony, this witness, without objection, had stated his "opinion that Mr. Giles represents an imminent escape risk and . . . possibly he could be assaultive if he did escape." There was no motion to strike that evidence. Any prejudicial effect which might have resulted from the later stated opinions to which the defendant objected would have already been done by the testimony previously stated without objection.

It is asserted here that one not a psychiatrist may not give opinion testimony on the defendant's mental condition. Subject to the proper foundation, a psychiatric social worker may give opinion testimony on a defendant's mental condition. Section 16-8-109, C.R.S. 1973.[10] The necessary predicate for this lay opinion evidence is a showing of adequate means to have become acquainted with the person whose mental condition is at issue.[11] In fact, trial judges have very broad discretion in determining whether or not any proffered witness is qualified to give testimony.[12] Thus there was no prejudicial error. *See People v. Medina*, 185 Colo. 101, 521 P.2d 1257 (1974).

The defendant further argues that the People's expert psychiatrist should not have been allowed to testify to the type of improvement by the defendant necessary before release would be appropriate. This is a matter within the sound discretion of the trial court, and we find no abuse of that discretion.

The jury verdict was supported by competent evidence.

The judgment is affirmed.

[10] Previously, Colo. Sess. Laws 1972, ch. 44, 39-8-109 at 229; *People v. Lyles*, 186 Colo. 302, 526 P.2d 1332 (1974).

[11] *Smith v. People*, 120 Colo. 39, 206 P.2d 826 (1949); *Turley v. People*, 73 Colo. 518, 216 P. 536 (1923); *See Leick v. People*, 136 Colo. 535, 322 P.2d 674 (1958).

[12] *Starkey v. Bryan*, 166 Colo. 43, 441 P.2d 314 (1968).