Francis J. DENTE, Plaintiff, Appellant,

v.

RIDDELL, INC., Defendant, Appellee.

No. 80–1591.

United States Court of Appeals,
First Circuit.

Argued May 4, 1981.

Decided Sept. 25, 1981.

William E. Searson, III, Boston, Mass., with whom James P. McCarthy, and McCarthy & Sheehan, Boston, Mass., were on brief, for plaintiff, appellant.

Phillip M. Davis, Boston, Mass., with whom Elizabeth A. Sharawara and Morrison, Mahoney & Miller, Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, GIBSON,* Senior Circuit Judge, and CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

On October 25, 1975, Francis Dente was injured during a college football game while wearing a football helmet manufactured by Riddell, Inc. Two years later Dente sued Riddell for negligence and breach of warranty, alleging that defects in the helmet had caused him to sustain permanent brain damage. In a special verdict delivered after 13 days of trial and nearly two days of deliberation, the jury found that the helmet was defectively designed;

* Of the Eighth Circuit, sitting by designation.

that Riddell failed to warn Dente adequately of a latent danger in the use of the helmet; that Riddell had violated an implied warranty of merchantability; and that Dente was not contributorily negligent. However, the jury also found that Riddell's conduct had not caused the plaintiff damage. Judgment was therefore entered for Riddell. His motion for a new trial having been denied, Dente appeals.

Dente contends that the district court committed reversible error when, on the eighth day of trial, it allowed into evidence certain portions of Dente's medical records previously excluded. We hold that the court's ruling was not an abuse of its discretion under Federal Rule of Evidence 403, and does not constitute cause for reversal.

The genesis of the challenged ruling is complicated. At trial, Dente testified that since October 25, 1975, the date of his football injury, he has suffered from headaches, dizziness, impaired balance and perception, a drooping eyelid, ringing in his ears and loss of weight. Several witnesses, among them Dente's mother and girlfriend, testified to a dramatic change in Dente's personality after his injury: formerly easygoing, personable, talkative, athletic and socially active, he purportedly became constantly fatigued, sleepy, irritable and unable to concentrate. He gave up athletics and, no longer able to keep up with his friends, became socially inactive. A medical expert testified that Dente's symptoms were the result of a permanent brain stem lesion sustained in the football game. Riddell presented a different picture. Dente's school and work records were said to show that he had remained active and had done well. Riddell's medical experts testified that the mishap on October 25, 1975 had caused Dente no permanent damage and that his symptoms were attributable to past ear infections and present psychological problems.

On the second day of trial, Dente put in evidence "Plaintiff's Exhibit Number 9," a

file folder bearing the name "Francis Dente" and containing approximately 80 pages of medical records. Among the records was a set of lengthy handwritten notes taken during an examination at Massachusetts General Hospital on November 4, 1976 —a little more than a year after Dente allegedly sustained a permanent brain injury. The notes included the following statements:

*# 4 Penile Discharge*

Pt. has few drops of clear fluid from penis intermittently thru day. c̄ Blood on one occasion. * * * Pt has intercourse a twice a week with a 10 partners in the last year. s̄ prostitutes. STS—8/75. s̄ known contact c̄ ge. Pt. concerned about VD.

\* \* \* \* \* \*

Soc. hx: The pt grew up in E. Boston where he played for the E. Boston high school football team. Attended Wentworth Institute, now at Boston State in 3rd year where he is majoring in math & psych. Wants to be a teacher. Also has a sinecure c̄ Boston recreation dep't which essentially consists of coaching E. Boston HS football team informally. Pt lives at home.

Pt concerned because last he was involved in gambling & other illicit activities. Now getting out of that scene, but still has few loose ends.

*Habits* meds: see ¶ # 2—

also used anabolic steroids & amphetamines in sports last year—s̄ cigarettes: * * * said to get quite drunk at least once a week. 10 shots. Now will get drunk every few weeks—few drinks in evening 2–3 nights/week.

The above-quoted material was not brought to the district court's attention until the fourth day of trial when, apparently at Dente's request, the court ordered that the references to sexual intercourse, gambling and other illicit activities be deleted from the records.[1] The court grounded its ruling

---

1. The court stated that "the pages" would be removed before the records went to the jury. Dente now argues that by this remark the court also meant to exclude references to Dente's "sinecure" with the Boston recreation department and his drinking habits. This is too broad

on Federal Rule of Evidence 403, which provides,

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[2]

Riddell objected on several grounds.[3] It represented to the court that its medical witnesses had relied on the excluded portions of Dente's medical records in diagnosing the nature and cause of his symptoms. Second, it argued that the evidence provided an alternative explanation for Dente's alleged sleepiness, fatigue and loss of concentration. Third, the defendant felt that evidence of Dente's sexual and other activity directly contradicted, or at least affected the credibility of, several witnesses' testimony about the decline in Dente's social activity. Finally, Riddell described the excluded evidence as "vital" to the issue of damages.

The district court initially indicated that it was unpersuaded by Riddell's arguments. It saw the excluded evidence as having little relevance. The court expressed the view that the meaning of "social activity" was too distinct from the meaning of "sexual activity" to permit the inference that because Dente had intercourse with some frequency he also, contrary to his claims, enjoyed an active social life. Dente's sexual activities as such were not in issue, nor was there evidence, for comparative purposes, of how sexually active he had been before the injury. To rebut testimony about Dente's alleged personality change, the court felt that Riddell could introduce Dente's school and work records as well as testimony of teachers, professors, fellow employees, teammates and neighbors. Under these circumstances, the court concluded that the danger of unfair prejudice "substantially outweighed" the probative value of the evidence and ordered it excluded.

On the eighth day of trial, however, the court reversed itself and ruled that the references in Dente's medical records to sex, gambling and illicit activities could be introduced into evidence. The court's ruling came while Dente's attorney was cross-examining one of defendant's expert witnesses, Dr. Ommaya. Probing the basis for Dr. Ommaya's opinion that Dente did not suffer from a brain injury, plaintiff asked whether testimony by Dente and his mother about Dente's condition was "significant." The plaintiff then asked,

> Q What about the way he—his social life changed after October of '75 before he went to Brigham? Would that be significant?
>
> A I have no evidence of any social activities.
>
> Q Did you check into that?
>
> A I was told not to.
>
> Q And you didn't?
>
> A I was told that.
>
> Q Who told you not to?

---

a reading of the court's statement, which, taken in context, was limited to the two sentences in the record dealing with sexual intercourse, gambling and "illicit activities." It is clear that the court did not intend to exclude two entire pages of the medical records from evidence, since after striking the reference to sex, gambling and illicit activities, it ruled that the reference to Dente's use of "anabolic steroids and amphetamines" *was* admissible. Moreover, each time the court reiterated or explained its ruling, it mentioned only the references to sexual intercourse, gambling and other illicit activities. So far as appears, Dente at no point specifically objected to, or even identified, the other references which he now contends fell within the court's ruling. He therefore may not now object to the admission of evidence regarding his "sinecure" and drinking, other than on the ground of plain error. This it clearly was not.

2. The portions of the medical records at issue were not, and are not now, objected to as hearsay. We have no occasion, therefore, to decide whether they come within the medical records exception to the hearsay rule, Fed.R. Evid. 803(4).

3. After the fourth day of trial, the issue of the admissibility of this evidence resurfaced on the fifth and seventh days of trial. Our presentation of the defendant's arguments for admission and the court's grounds for exclusion is a composite of discussions between court and counsel on these several occasions.

A Mr. Davis [counsel for Riddell] said that the Judge had ruled—`

MR. DAVIS: Excuse Me.

THE COURT: With respect to that one item?

THE WITNESS: As to the social activity.

THE COURT: That is what you call social activity?

THE WITNESS: Covering that, yes.

THE COURT: Does that cover all aspects of social activity as far as you are concerned?

THE WITNESS: Yes.

THE COURT: That is the only social activity you know of?

THE WITNESS: The only social activity I was told that is in the record.

THE COURT: Other than that activity, is there any activity?

THE WITNESS: I am not aware of any.

Q And Doctor—

THE COURT: Do you want to put it in?

MR. DAVIS: Pardon me?

THE COURT: Do you want to put that in? Are you rising to object? Do you want me to change my ruling and allow that into evidence, put it in?

MR. DAVIS: Not at this point. As part of my case and when I choose to.

THE COURT: I say you may put it in. Go ahead.

The court explained its reversal in a bench conference the next morning:

Now my understanding of the situation was that Dr. Ommaya injected into the case what it is that I wanted excluded from the case by saying that I had ordered excluded. Now there will be a couple of other reasons to that material but I asked you. "Will the defendant inject it at all?" And I began to feel that perhaps the effort to proscribe this material might in a way be more prejudicial than the actual evidence itself. I mean, after a while, people start to wonder what the heck it is that is being kept out, so for that reason, because the doctor injected the fact that the evidence had been weeded out by me, I felt—but I don't feel that he did it with malice or with any intent to violate my order. If I did, he would still be here but accept the fact that it was answered inadvertently. Now, I am going to leave it up to you. It's a matter of trial tactics. You want to use it, go ahead. The jury may be impressed by it one way, the jury may be impressed another way.

The court ultimately allowed Dente's entire medical record, including the references to sexual intercourse, gambling and other illicit activities, to go to the jury during its deliberations.

On appeal, Dente argues that the district court's rationale for admitting this evidence —"the effort to proscribe this material might in a way be more prejudicial than the actual evidence itself"—contravenes Federal Rule of Evidence 403, which requires a court passing upon the admissibility of evidence to weigh the probative value of the evidence against its potential for unfair prejudice. According to Dente, the district court weighed only the prejudicial effect that might have arisen from continued exclusion of the objectionable portions of Dente's medical records, and overlooked their lack of probative value as earlier determined.

We do not think the record establishes that the court ignored its duties under Rule 403. The court was clearly aware of the rule, having referred to it earlier when excluding the material. Its failure to elaborate on the reason for deciding to admit the evidence, beyond the fact that the danger of prejudice might be greater if the evidence were excluded rather than admitted, did not in these circumstances imply that it was ignoring the proper factors under Rule 403. Rather, we infer that the court had simply come to believe that the balance as between unfair prejudice and probative value now tilted in favor of admission. This is not a case where the court either indicated some misreading of the Rule 403 balancing test or proceeded in ignorance or apparent disregard of it. *Compare United States v.*

*Figueroa,* 618 F.2d 934, 942–44 (2d Cir. 1980); *United States v. Dwyer,* 539 F.2d 924, 928 (2d Cir. 1976).

 A trial judge has much latitude in these matters. As Judge Weinstein points out, Rule 403 "purports to set no absolute standard but is designed as a guide for handling situations for which no specific rules have been formulated." 1 Weinstein's Evidence ¶ 403[02], at 13 (footnote omitted) (1980). The language of the rule provides that evidence "may" be excluded if its probative value is substantially outweighed by the danger of prejudice or other factors. In this respect, Rule 403 as finally enacted was less stringent than the original version, which would have mandated exclusion if the probative value of evidence was outweighed by the risks of prejudice. 1 Weinstein's Evidence ¶ 403[01], at 4–5 (1980). Assuming, even so, that the trial court's discretion is reviewable for abuse, the court still retains considerable discretion to exercise judgment as to what evidence in this category to admit and what to exclude. *See* 22 Wright & Graham, Federal Practice & Procedure: Evidence § 5213, at 261; § 5222 (1978); *United States v. D'Alora,* 585 F.2d 16, 21 (1st Cir. 1978); *United States v. Long,* 574 F.2d 761, 767–68 (3d Cir.), *cert. denied,* 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978); *United States v. Robinson,* 560 F.2d 507, 514–16 (2d Cir. 1977) (en banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978).

██ In the instant case, the court's exercise of discretion fell within the range of permissible rulings. On the one hand, the challenged evidence was material to legitimate issues of importance; on the other, the danger of unfair prejudice was not so high, when balanced against the possible usefulness of the evidence in reaching a fair decision, as to compel a finding that such danger "substantially outweighed" its probative value.

The evidence was germane to the cause of Dente's physical and mental condition[4]—a central and hotly contested issue. Dr. Winkler, defendant's expert witness, expressly referred to this evidence as part of the basis for his opinion that Dente had sustained only a mild concussion during the football game, and that his current symptoms were due to an ear disturbance and a neurosis. We think it was also probative (although the district court felt otherwise) to Dente's claim that he was not socially active: evidence of the frequency with which he had sexual intercourse in the year after his injury could reasonably have been interpreted by the jury to make this claim less probable. *See* Fed.R.Evid. 401. The references in Dente's record to gambling and illicit activity are less probative as to Dente's physical condition; still, we cannot say they are entirely without probative value. One of Riddell's medical experts testified that Dente's mention of those subjects during a medical examination suggested a neurotic concern with them, possibly indicating that Dente's alleged symptoms were caused by psychological rather than physical problems.

The evidence thus possessed probative value. Turning to the matter of unfair prejudice, we do not think the potential dangers in this regard were excessive. To be sure, the evidence "could be looked upon negatively by jurors with particular sensitivities," *United States v. Mehtala,* 578 F.2d 6, 9 (1st Cir. 1978), but it might equally be thought that, in today's world, these extremely brief, unelaborated references to sexual intercourse, gambling and undefined "illicit activity" in a medical file consisting of some 80 pages were not likely to incite "the irrational passions of a jury." *United States v. Miller,* 573 F.2d 388, 393 (7th Cir. 1978). Moreover, once the jury had learned that certain evidence regarding social activities had been excluded, the trial court feared that possible speculation by the jury

4. The ill-defined nature and unknown cause of Dente's condition made his wide-ranging statements to medical personnel more pertinent to his diagnosis and treatment than might otherwise have been true. *Cf.* Fed.R.Evid. 803(4)

(excepting from hearsay rule statements made for purposes of medical diagnosis or treatment which are "reasonably pertinent to diagnosis or treatment").

if the evidence continued to be excluded might "be more prejudicial than the actual evidence itself"; thus, the appropriate prejudice to weigh under Rule 403 in this case is the "marginal" increase that would result from inclusion over the prejudice resulting from exclusion. This would be less than the prejudice resulting solely from inclusion, which we have already noted was not necessarily great.

■ The judge was confronted in a close case with the need to make a close call. That he finally opted to put everything on the table, in full view of those responsible for deciding this case, was not, we think, an irresponsible judgment. It has been said with respect to Rule 403, "the general rule is that the balance should be struck in favor of admission." *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980). Jurors are adults, and in a case such as this, which required the factfinder to make a close judgment call between plaintiff's version of causation and defendant's, a judge might feel more satisfied that the jury receive the entire medical record rather than only a part.[5]

Riddell's request for "just damages" and double costs is denied. *See* 28 U.S.C. § 1912; Fed.R.App.P. 38.

*Affirmed.*

---

**5.** Dente argues that the trial court should have given a limiting instruction to the jury in order to minimize the danger of unfair prejudice and to guard against the jury's use of the evidence outside the bounds of its relevance. The short answer to this contention is that Dente waived his objections by failing to object for lack of relevance, to move to strike, or to request such a limiting instruction. *See* Fed.R.Evid.

103(a)(1), 104(b), 105. *See also Malatkofski v. United States*, 179 F.2d 905, 914 (1st Cir. 1950).

Similarly, Dente's argument that an allegedly ambiguous reference to prostitutes in the medical record should not have been submitted to the jury because of the danger of confusion was never made to the district court, and we therefore decline to consider it.