**Theodore R. VIALPANDO, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**No. 84SC421.**

Supreme Court of Colorado,
En Banc.

Nov. 10, 1986.

Rehearing Denied Dec. 2, 1986.

David F. Vela, State Public Defender Barbara S. Blackman, Chief Deputy Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter Stapp, Asst. Atty. Gen., Denver, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the court of appeals' decision in *People v. Vialpando*, 695 P.2d 1192 (Colo.App.1984), which affirmed a judgment entered on a jury verdict finding the defendant, Theodore R. Vialpando, ineligible for release from commitment following an adjudication of not guilty by reason of insanity. The court of appeals held that the district court properly excluded the defendant's proffer of testimony from an expert witness regarding conditions which a disposition committee of the Colorado State Hospital recommended to be imposed on the defendant in order to eliminate any potential danger incident to his release. In the court of appeals' view, such evidence was irrelevant as a matter of law. We reverse the judgment of the court of appeals and remand the case for a new release hearing.

## I.

The defendant was found not guilty by reason of insanity on the charge of aggravated robbery and was committed to the department of institutions on March 11, 1980, until such time as he might be found eligible for release. Upon his commitment, the defendant was placed in the state hospital for psychiatric care and treatment. Approximately one year later, the defendant filed a request for a release hearing pursuant to section 16–8–115(1), 8A C.R.S. (1986), and for the appointment of an attorney to represent him in the release proceeding.

The court appointed the public defender's office to represent the defendant.

In early 1982, prior to the release hearing, the defendant was evaluated by the disposition committee of the state hospital. This committee, which consists of psychiatrists, psychologists, psychiatric nurses, and other professionals who work in the hospital's department of forensic psychiatry, makes recommendations to the hospital superintendent regarding the feasibility of releasing persons committed to the hospital as a result of judicial proceedings. The disposition committee recommended to the superintendent that the defendant be released, but the superintendent disagreed with the recommendation.

On August 8, 1982, a jury trial was held to determine whether the defendant was eligible for release.[1] By statute, a defendant may be released if he "has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future." § 16–8–120(1), 8A C.R.S. (1986). The defendant presented opinion testimony from several expert witnesses in support of his release. A hospital psychiatrist who had treated the defendant and who was a member of the disposition committee testified that in his opinion the defendant qualified for release under the statutory test. A hospital psychologist, also a member of the disposition committee, offered the same opinion. Other hospital professionals involved in defendant's treatment and evaluation testified to like effect.

One of the witnesses called by the defendant was the chief nurse of the hospital's forensic psychiatry department and a member of the disposition committee. The trial court received the witness as an expert in forensic nursing, and defense counsel elicited the nurse's opinion that the defendant was not suffering from any abnormal mental condition and could be released without the likelihood of future danger. Defense counsel also sought to elicit from the witness the specific conditions of release which the disposition committee had recommended in the course of its evaluation of the defendant. The prosecutor objected to this evidence as irrelevant, whereupon defense counsel offered to prove that the testimony would relate to the problems which, in the committee's view, the defendant would be likely to encounter on his release, and to the conditions and constraints which had been recommended by the committee in order to prevent any future episodes of dangerous behavior. The trial court ruled that the proffered testimony regarding conditions of release was inadmissible, reasoning that since under the statutory scheme it was the prerogative of the court alone, and not the jury, to impose conditions of release, any testimony regarding release conditions was irrelevant as a matter of law.

■ After the defense rested, the prosecution presented testimony from various psychiatrists and other expert witnesses that the defendant was suffering from an abnormal mental condition and would be potentially dangerous if released from his commitment. Since the prosecution presented evidence of the defendant's ineligibility for release by reason of an impaired mental condition, the defendant had the burden of proving his eligibility for release by a preponderance of the evidence. § 16–8–115(2), 8A C.R.S. (1986).

At the conclusion of the evidence the trial court instructed the jury on the statutory test for eligibility for release and on the defendant's burden of proof, and further told the jury that in the event the defendant were to be found eligible for release the court could impose such terms and conditions as would be in the best interest of the defendant and the community. The court submitted two general forms of verdict to the jury, one finding the defendant eligible for release and the other finding the defendant not eligible for re-

---

1. Section 16–8–115(2), 8A C.R.S. (1986), provides that a hearing for a defendant seeking release from commitment after a verdict of not guilty by reason of insanity is to be to the court or, on demand by the defendant, to a jury of not more than six persons.

lease. The jury found the defendant not eligible for release.

The defendant appealed the evidentiary ruling of the trial court to the court of appeals. The court of appeals affirmed the judgment, stating in pertinent part as follows:

> In *People v. Giles*, 192 Colo. 240, 557 P.2d 408 (1976), the court held that: "[T]he jury's function ends with its determination whether or not the defendant is eligible for release. The decision whether to impose conditions on release is solely for the court." We hold that adoption of CRE 401 did not alter the rule of *People v. Giles*, and thus, defendant's proffered evidence was irrelevant as a matter of law.

695 P.2d at 1193. We thereafter granted the defendant's petition to review the correctness of the court of appeals' resolution of this evidentiary issue.

## II.

As a preliminary matter, we address the court of appeals' determination that this court's opinion in *Giles*, 192 Colo. 240, 557 P.2d 408, rendered the proffered evidence on the conditions of release irrelevant as a matter of law. We believe the court of appeals erred in reading *Giles* as enunciating a per se rule of exclusion with respect to the proffered evidence in this case.

In *Giles*, the defendant challenged the trial court's exclusion of evidence regarding treatment available to him under a conditional release as well as the trial court's refusal of a tendered verdict form which would have permitted the jury to find the defendant eligible for conditional release. This court upheld these rulings as proper in the context of the statutory scheme, stating:

> Where the trier of fact finds the defendant eligible for release, the statute empowers the court to impose such terms and conditions on release as it "determines are in the best interests of the defendant and the community, and the

jury shall be so instructed." Section 16–8–115(3), C.R.S. (1973).

\* \* \* \* \* \*

> It is clear from the statute that the jury's function ends with its determination whether or not the defendant is eligible for release. The decision whether to impose conditions on release is solely for the court.
>
> Obviously, where conditional release is appropriate, the terms and conditions must be tailor-made by the court to fit the individual case. It is the court, not the jury, which has the necessary experience and knowledge of available alternatives to perform this function.

192 Colo. at 247, 557 P.2d at 413.

*Giles* was decided prior to the promulgation of the Colorado Rules of Evidence, and the precedential value of that decision is somewhat obscured by reason of the court's commingling of evidentiary relevancy with the proper scope of the jury's fact-finding function in a release hearing. Admittedly, *Giles* could be read to prohibit the admission of any evidence of release conditions regardless of the purpose for which such evidence is offered, thus keeping from the trier of fact evidence that might well prove helpful to an informed decision on the ultimate issue of the defendant's eligibility for release. We consider *Giles*, however, as establishing the narrower proposition that, because a verdict form on conditional release would usurp the trial court's prerogative to determine whether conditions of release should be imposed and to fashion the actual conditions of release, evidence offered during trial for the purpose of submitting to the jury a special verdict form on conditional release is simply inadmissible as a matter of law.

Our interpretation of *Giles* finds support in other parts of that opinion. Prior to addressing the trial court's rulings on the release evidence and the verdict form, the court addressed the admissibility of evidence relating to the criminal charges filed against the defendant and to the defendant's violent conduct subsequent to the insanity adjudication. In holding that the

trial court properly admitted such evidence, the court stated:

> In a release hearing, the scope of inquiry is necessarily broad. The jury must weigh the defendant's desire for freedom against the risk that, if released, he may harm himself or others. To require the jury to decide this issue in an informational vacuum would be unfair to both the defendant and the public. A jury charged with such a heavy responsibility is entitled to hear all competent evidence relevant to the ultimate issue of whether the defendant meets the legal standard for release. Obviously, this includes evidence of the defendant's psychiatric history, the circumstances leading to his insanity plea and the resultant commitment, his prognosis for recovery, and all other relevant facts.

192 Colo. at 246, 557 P.2d at 412. It would indeed be anomalous to allude to the jury's entitlement to hear all competent evidence relevant to the ultimate issue in the case and yet exclude as a matter of law evidence that bears on the likelihood of whether the defendant's release would pose a danger to himself, to others, or to the community in the reasonably foreseeable future.

We therefore conclude that *Giles* did not create a per se prohibition on the evidence of release conditions proffered by the defendant in this case. Whether that evidence should have been admitted must be determined within the framework of the rules of relevancy contained in the Colorado Rules of Evidence. It is to that question that we now turn.

### III.

Relevancy is a threshold standard which all evidentiary offerings must meet. *E.g., People v. Lowe,* 660 P.2d 1261, 1264 (Colo. 1983); *People v. Madson,* 638 P.2d 18, 28 (Colo.1981). CRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence which is not relevant is not admissi-

ble. CRE 402. If an evidentiary offering does satisfy the definition of relevancy in CRE 401, it may nevertheless be excluded under CRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In *People v. Carlson,* 712 P.2d 1018 (Colo.1986), we outlined the three-tiered analysis to be utilized in resolving relevancy challenges. A court must first ask whether, under CRE 401, the proffered evidence relates to a fact that is of consequence to the determination of the action. If this question is answered in the negative, the evidence is simply inadmissible as having no bearing on the case. CRE 402. If the initial question is answered in the affirmative, a court must then ask whether, as provided in CRE 401, the proffered evidence makes the existence of a fact of consequence to the determination of the action "more probable or less probable than it would be without the evidence." If the evidence does not satisfy this test of logical relevancy, the inquiry is at an end and the evidence should not be admitted. If, however, the evidence satisfies CRE 401's test of logical relevancy, a third question must be addressed—that is, whether under CRE 403 "the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," or by the other countervailing factors set forth in the rule. We address these three considerations in turn.

### A.

■ In determining whether the defendant's proffered evidence related to a fact of consequence to the determination of the action, we look first to the substantive law on which the action is based. *E.g. Lowe,* 660 P.2d at 1264; *Carlson,* 712 P.2d at 1022. As already noted, the statutory standard for release is whether or not the defendant has an abnormal mental condition "which would be likely to cause him to be

dangerous either to himself or to others or to the community in the reasonably foreseeable future." § 16–8–120(1), 8A C.R.S. (1986). Clearly, the potential dangerousness of a defendant is a critical element in determining his eligibility for release. The proffered evidence regarding conditions designed to reduce that dangerousness was, therefore, directly related to a fact of consequence to the determination of the action.

### B.

■ We also conclude that the proffered evidence satisfied the standard of logical relevancy under CRE 401. The rejected evidence consisted of testimony regarding conditions of release which, in the opinion of the disposition committee, were designed to eliminate or at least reduce the risk of future dangerous conduct on the part of the defendant. There can be no question that this evidence tended to make the existence of a "fact of consequence to the determination of the action"—the absence of future dangerousness—more probable with the evidence than without it and, as such, met the relevancy test of CRE 401.

For purposes of CRE 401, a "fact of consequence to the determination of the action" also includes facts bearing circumstantially upon the weight or probative value to be given other evidence in the case. M. Graham, *Handbook of Federal Evidence* § 401.1, at 151–52 (2d ed. 1986). The evidence relating to the conditions of release proposed by the disposition committee would have provided the jury with important data for evaluating the expert testimony on the issue of the defendant's future dangerousness.[2] Facts or data underlying expert testimony can be especially helpful in a case such as this, where the expert witnesses are in substantial disagreement on the ultimate issue and the jury must choose between their conflicting opinions in arriving at a verdict. *See, e.g., United States v. Brawner*, 471 F.2d 969, 994 (D.C.Cir.1972) (expert testimony on issue of insanity is to be accompanied "by the presentation of the facts and premises underlying the opinions and conclusions of the experts"); *United States v. R.J. Reynolds Tobacco Co.*, 416 F.Supp. 316, 325 (D.N.J.1976) (citing Fed.R.Evid. 702–705, court notes that opinions are valueless without exploration of the underlying facts and bases for the opinions); *People v. Lyles*, 186 Colo. 302, 306, 526 P.2d 1332, 1334 (1974) (at a release hearing a clinical psychologist should be permitted to offer his opinion regarding the defendant's eligibility for release and to give as well "the bases for his opinion").

We are satisfied that the evidence relating to conditions of release recommended by the disposition committee was relevant to the issue of the future dangerousness of the defendant—an essential component of the statutory test for eligibility for release—and also constituted background data relevant to the opinions of the expert witnesses who testified during the trial.

### C.

■ Under CRE 403, evidence that is logically relevant may nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. While the decision to exclude evidence under the balancing test of CRE 403 is a discretionary one, *see, e.g., Bloskas v. Murray*, 646 P.2d 907, 911 (Colo.1982); *People v. Abbott*, 638 P.2d 781, 787 (Colo.1981), the trial court's discretion is not absolute. It is generally recognized that in a close case the balance should be struck in favor of admitting pro-

---

**2.** CRE 705 states:

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

While this rule permits an expert witness to testify without disclosing the basis for his opinion on direct examination, it certainly does not prohibit the expert from disclosing that basis.

bative evidence. *E.g., Dente v. Riddell, Inc.,* 664 F.2d 1, 6 (1st Cir.1981); *United States v. Davis,* 639 F.2d 239, 244 (5th Cir.1981); *United States v. Dennis,* 625 F.2d 782, 797 (8th Cir.1980); *United States v. Day,* 591 F.2d 861, 878 (D.C.Cir.1978); *Lowe,* 660 P.2d at 1264.

The balancing required by Rule 403 contemplates the consideration of such factors as the importance of the fact of consequence for which the evidence is offered, the strength and length of the chain of inferences necessary to establish the fact of consequence, the availability of alternative means of proof, whether the fact of consequence for which the evidence is offered is being disputed, and, if appropriate, the potential effectiveness of a limiting instruction in the event of admission. M. Graham, *supra,* § 403.1, at 180–81. In this case, the evidence relating to the conditions of release was offered on one of the essential elements of the statutory test for release—namely, the absence of future dangerousness. This element was very much in dispute, as evidenced by the conflicting testimony by the expert witnesses for each side. The evidence relating to the conditions of release bore directly, not merely incidentally, on the issue of future dangerousness. Moreover, the exclusion of this evidence deprived the defendant's expert witnesses of an important foundational component which the jury might well have utilized in evaluating the validity of the opinion evidence elicited during the trial. Finally, while the proffered evidence might have had some potential for confusion in that the court could have imposed conditions quite different from those proposed, any possible confusion could have been effectively eliminated by instructing the jury that such evidence was to be considered only on the issue of the defendant's future dangerousness and not as proof of the conditions which would actually be imposed if the defendant were to be released. We are thus satisfied that the evidence relating to the conditions of release was logically relevant evidence, the probative value of which was not substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or any of the other factors in CRE 403.

The judgment is reversed and the cause is remanded to the court of appeals with directions to return the case to the trial court for a new release hearing.

VOLLACK, J., dissents.

ERICKSON and ROVIRA, JJ., join in the dissent.

VOLLACK, Justice, dissenting:

I respectfully dissent from the majority's holding, which reverses the judgment of the court of appeals and remands the case for a new release hearing. The defendant, under the provisions of section 16–8–115(1), 8A C.R.S. (1986), moved for a release hearing. The defendant timely requested a jury determination of his eligibility for release under section 16–8–115(2), 8A C.R.S. (1986). The defendant offered evidence of conditions and constraints if released to prevent any future episodes of dangerous behavior. The trial court ruled the evidence to be inadmissible because section 16–8–115(3)(a) mandates that it is the court's prerogative alone and not the jury's to impose conditions for release. I agree.

The sole question for the trier of fact in a release hearing is set forth in section 16–8–120(1), 8A C.R.S. (1986):

As to any person charged with any crime allegedly committed on or after June 2, 1965, the test for determination of a defendant's sanity for release from commitment, or his eligibility for conditional release, shall be: "That the defendant has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future."

By a plain reading of the statute, one would conclude that section 16–8–115(3)(a), 8A C.R.S. (1986), does not become operational until after the trier of fact has returned a verdict that the defendant is eligible for release.

Section 16–8–115(3)(a) reads:

*If the court or jury finds the defendant eligible for release,* the *court may* impose such terms and conditions as the court determines are in the best interests of the defendant and the community, and the jury shall be so instructed. If the court or jury finds the defendant ineligible for release, the court shall recommit the defendant.

(Emphasis added.)

In *People v. Giles,* 192 Colo. 240, 557 P.2d 408 (1976), we held that pursuant to section 16–8–115(3)(a), the jury was not to consider the question of conditional release in determining eligibility for release. We stated in *Giles:*

> It is clear from the statute that the jury's function ends with its determination whether or not the defendant is eligible for release. The decision whether to impose conditions on release is solely for the court.

> Obviously, where conditional release is appropriate, the terms and conditions must be tailor-made by the court to fit the individual case. *It is the court, not the jury,* which has the necessary experience and knowledge of available alternatives to perform this function....

192 Colo. at 247, 557 P.2d at 413 (emphasis added).

The majority reads this holding in *Giles* to stand for the proposition that only evidence offered during trial for the purpose of submitting to the jury a special verdict form on conditional release is inadmissible as a matter of law. Majority Op. at 1093. I disagree. The majority's interpretation undermines the unambiguous holding in *Giles* that the jury is not to consider evidence regarding treatment which would be available if a release were granted.

The trial court found the evidence of conditions to be imposed if release were granted to be irrelevant and inadmissible. Under C.R.E. 403, relevant evidence may be excluded under a balancing test if the probative value is substantially outweighed by the danger of unfair prejudice, *confusion of the issues,* or *misleading the jury,* or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The sole jury question to be determined in a release hearing is whether or not the defendant has no abnormal mental conditions which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future. § 16–8–120, 8A C.R.S. (1986). The jury verdict determines whether the defendant is eligible for release. A conditional release verdict form is not proper under the statutes. *See People v. Giles,* 192 Colo. 240, 557 P.2d 408 (1976). Therefore, whether the defendant is eligible for release is a question wholly separate and distinct from the discretionary consideration of whether the court, after release is granted by the fact finder, will impose conditions on the release. It logically follows that testimony of conditions and constraints if released to prevent any future episodes of dangerous behavior would *tend to confuse the issue* or *mislead the jury* as to its sole purpose to determine if the defendant is eligible for release. If such evidence were admissible, a jury's verdict to release a defendant would likely be based in part upon the jury's mistaken belief that evidence as to conditions and constraints would be imposed upon the defendant. Pursuant to section 16–8–115(3)(a), the court, in accepting a verdict, is not bound to impose any conditions on release.

The judgment should be affirmed.

I am authorized to state that Justice ERICKSON and Justice ROVIRA join in this dissent.