23CA0952 Peo v Dockins 01-02-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0952
Weld County District Court No. 20CR1916
Honorable Timothy Kerns, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Eric James Dockins,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE BROWN
Welling and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel Z. Geiman, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Eric James Dockins, appeals the judgment of conviction entered upon jury verdicts finding him guilty of vehicular eluding and driving under restraint (DUR).  Dockins contends that the district court erred by (1) denying his motion for a mistrial; (2) allowing the prosecutor to commit misconduct; and (3) admitting evidence of a prior conviction.  Dockins further contends that the cumulative effect of these errors requires reversal.  We affirm.

## I.    Background

¶ 2    On August 27, 2020, Officer Albert Castillo was on patrol in Lochbuie, Colorado, at approximately 1 a.m. when he noticed a man he recognized as Dockins standing next to a motorcycle in front of a house.  As he drove by, Officer Castillo ran Dockins' name through Colorado and national criminal database systems, which returned a photograph that matched Dockins' appearance as well as information that Dockins' driving status was revoked.  Officer Castillo also confirmed that the motorcycle was registered to Dockins.

¶ 3    When Officer Castillo circled back, Dockins started to drive away on the motorcycle.  Officer Castillo attempted to stop Dockins, first activating his overhead lights and then his sirens.  Dockins did

1

not stop. Instead, he accelerated, almost lost control in a roundabout, and continued onto I-76, driving at speeds faster than 110 miles per hour. Officer Castillo ultimately terminated his pursuit. He went back to the house where he first saw Dockins and spoke with Dockins' mother, who lived in the house and said she did not know where Dockins was.

¶ 4 For this conduct, the prosecution later charged Dockins with vehicular eluding and DUR. A jury convicted Dockins as charged.

## II. Mistrial

¶ 5 Dockins contends that the district court erred by denying his motion for a mistrial after his alleged alibi witness failed to appear. We perceive no abuse of discretion.

### A. Applicable Law and Standard of Review

¶ 6 "A mistrial is a drastic remedy that is warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means." *People v. Cousins*, 181 P.3d 365, 373 (Colo. App. 2007) (quoting *People v. Dore*, 997 P.2d 1214, 1221 (Colo. App. 1999)). A trial court has broad discretion to grant or deny a motion for a mistrial, and we will not reverse its decision absent an abuse of that discretion and prejudice to the defendant.

*People v. Salas*, 2017 COA 63, ¶ 9.  A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law.  *People v. Grant*, 2021 COA 53, ¶ 12.[1]

### B. Additional Background

¶ 7    The district court initially set Dockins' trial for May 2022.  At the pretrial readiness conference, defense counsel requested a continuance because he was having issues contacting Dockins' alibi witness, later identified as Kimberly Collins.  The court granted the continuance over the prosecutor's objection.

¶ 8    Dockins first proceeded to trial in July 2022.  On the morning of the second day, after the prosecution rested its case, defense counsel told the court that Collins was scheduled to testify that afternoon but was unable to appear due to an emergency with her autistic son.  Defense counsel represented that Collins could appear

---

[1] The parties dispute whether we review the alleged error under the constitutional harmless error standard or the harmless error standard.  *See Hagos v. People*, 2012 CO 63, ¶¶ 11-12 (we review preserved constitutional trial errors for constitutional harmless error and preserved nonconstitutional trial errors for harmless error).  Because we conclude that the district court did not abuse its discretion or deprive Dockins of his right to present a defense, we need not resolve this dispute.

the following morning, so the court continued the trial to the next day to accommodate her.

¶ 9 Early the next morning, however, Collins texted defense counsel's investigator that she was not willing to come to court due to ongoing issues with her son. Defense counsel requested, and the court agreed, to allow Collins to testify by Webex. But Collins did not respond to any attempts by counsel or the court to contact her.

¶ 10 Eventually, defense counsel requested a mistrial. She argued that Collins was an essential witness and made an offer of proof regarding her testimony. The prosecutor objected, noting that the trial had already been continued once before because of Collins and that Collins had twelve prior failures to appear in her own criminal cases. The prosecutor said she had "zero confidence . . . regardless of a mistrial that [Collins] w[ould] actually show up on a subpoena." The court granted the mistrial, reasoning that there appeared to be a "true emergency," which was not the product of any of the parties' or the court's actions, and that "there's no question that she's a substantial material witness."

¶ 11 Dockins' second trial began on November 28, 2022. Collins appeared by Webex that morning, despite having been subpoenaed

to appear in person, and the court told her to appear in person at 8:30 or 9 a.m. the following day. Again, the prosecution presented its entire case and rested at the end of the first day of trial.

¶ 12    By 9:52 a.m. on November 29, Collins had not yet appeared, so defense counsel moved for a second mistrial. Counsel argued that denying the motion for a mistrial would be extremely prejudicial to Dockins because it would essentially deny him a defense. The court delayed ruling on the motion to allow Collins more time to appear, particularly given that it had snowed the night before. But by 10:30 a.m., Collins had still not appeared or contacted anyone to explain her absence.

¶ 13    Defense counsel supplemented her prior offer of proof regarding Collins' anticipated testimony, stating that Collins would testify that she hired Dockins to do remodeling work at her house in Colorado Springs from August 26-29, 2020, when she was scheduled to be in Las Vegas; she picked Dockins up from his home in Lochbuie on August 26, drove him to her home in Colorado Springs, and then left for Las Vegas; Dockins was "still at her house" on August 29 when she returned; and at some point that day, Dockins' girlfriend picked him up.

¶ 14    The prosecutor objected to the court declaring a mistrial, arguing that Dockins could establish his whereabouts through his mother's testimony because they lived in the same house at that time, his girlfriend's testimony because she picked him up from Colorado Springs, or his own testimony. The prosecutor also argued that Collins' behavior indicated that "she ha[d] no intention of complying with court orders or appearing before this [c]ourt." Based on the prosecutor's record, the absence of any communication from Collins, and the procedural history of the case, the court denied the motion for a mistrial.

### C.    The District Court Did Not Abuse Its Discretion by Denying Dockins' Second Motion for a Mistrial

¶ 15    Dockins contends that the district court erred by denying his second motion for a mistrial because identity was the central issue at trial, and his ability to present an alibi witness was critical for his defense. For three reasons, we conclude that the court did not abuse its discretion in denying Dockins' request for a mistrial.

¶ 16    First, we are not persuaded that Collins' anticipated testimony was probative of Dockins' whereabouts at the time the charged crimes were committed. We acknowledge that Collins' testimony

that she drove Dockins to Colorado Springs on August 26 would have made it somewhat less likely that Dockins was in Lochbuie early the following morning. But the offer of proof was not specific regarding *what time* Collins drove Dockins to Colorado Springs and, more importantly, did not account for Dockins' whereabouts at 1 a.m. on August 27. After Collins dropped Dockins off at her house in Colorado Springs, she took a trip to Las Vegas and did not return until August 29.

¶ 17    So, while Collins may have been able to account for Dockins' whereabouts at some point in time on August 26 and at another point in time on August 29, she could not provide an alibi for Dockins at the time of the charged offenses. And it is certainly plausible for Dockins to have made it back to Lochbuie from Colorado Springs between some unspecified time on August 26 and 1 a.m. on August 27. *See People v. Huckleberry*, 768 P.2d 1235, 1238 (Colo. 1989) ("The defense of alibi has been defined as '[a] defense that places the defendant *at the relevant time* in a different place than the scene involved and so removed therefrom as to render it *impossible* for him to be the guilty party.'" (quoting Black's Law Dictionary 66 (5th ed. 1979))) (emphases added); *see also*

*People v. Merklin*, 80 P.3d 921, 927 (Colo. App. 2003) (affirming the trial court's rejection of a theory of defense instruction claiming the defendant was elsewhere during the crime when the defendant did not present evidence showing he was in a different place at the relevant time).

¶ 18    Second, there were other ways in which Dockins could have presented his alibi defense — at least to the same extent that Collins' testimony would have been probative of that defense. For example, Dockins could have (1) questioned his mother, who had been called as a prosecution witness and testified that Dockins was at her house on August 26 in the early afternoon,[2] or (2) presented his girlfriend's testimony that she picked him up from Lochbuie on August 29. In addition, Dockins had ample opportunity to challenge Officer Castillo's identification and the balance of the evidence presented against him. As a result, Dockins was not

---

[2] Although Dockins could have relied on his mother's testimony that he left her house sometime on August 26, we note that she also testified that she thought Dockins "came back for awhile" and "was there when [she] went to bed" sometime between midnight and 3 a.m. This testimony underscores our conclusion that Collins could not provide Dockins with a true alibi because of her inability to account for Dockins' whereabouts at the time the charged crimes were committed.

deprived of his constitutional right to present a complete defense. *See People v. Conyac*, 2014 COA 8M, ¶ 93 ("A defendant's right to present a defense is violated only where the defendant was denied virtually his only means of effectively testing significant prosecution evidence." (citing *Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo. 2009))).

¶ 19    Third, denying the mistrial was justified by the procedural history of the case and Collins' repeated failures to appear. The court had previously continued the trial twice and declared a mistrial once to accommodate the same witness. By the time Dockins requested his second mistrial, the prosecution had presented and rested its case twice. Had the court granted another mistrial, the prosecution would have had to present its case a third time after yet further delay in the proceedings. *See People v. Bergerud*, 223 P.3d 686, 697 (Colo. 2010) ("The months invested in preparing for the trial, and the burdens already placed on the lives of witnesses, should not be lightly tossed aside once the trial has begun."); *cf. People v. Castro*, 657 P.2d 932, 943 (Colo. 1983) (that the "mistrial motion was made at the very outset of the trial, before the expenditure of time and effort in the presentation of testimony

9

and evidence to the jury" favored granting a mistrial), *overruled on other grounds by West v. People*, 2015 CO 5. And given Collins' historic behavior and her lack of communication with the court or counsel, it is speculative whether she would have shown up if another mistrial had been granted. *See People v. Marsh*, 396 P.3d 1, 14 (Colo. App. 2011) (the trial court did not abuse its discretion by denying a continuance where defendant could not establish a reasonable probability that the witness would ever be available to testify), *aff'd*, 2017 CO 10M; *People v. Chastain*, 733 P.2d 1206, 1213 (Colo. 1987) (a defendant's constitutional rights were not violated where a defense witness left the jurisdiction after being subpoenaed and the witness' unavailability was not due to the prosecution or the court).

¶ 20 Considering all these circumstances, we conclude that the district court did not abuse its discretion by denying Dockins' second motion for a mistrial and that "the type of substantial prejudice that requires a mistrial was absent" here. *People v. Williams*, 2012 COA 165, ¶ 23; *see also Grant*, ¶ 12; *Cousins*, 181 P.3d at 373.

### III. Prosecutorial Misconduct

¶ 21    Dockins contends that the district court erred when it allowed the prosecutor to commit misconduct during opening and closing arguments. We are not persuaded.

#### A. Applicable Law and Standard of Review

¶ 22    We engage in a two-step analysis when reviewing claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances. *Id.* Second, if the conduct was improper, we decide whether it warrants reversal under the proper standard of review. *Id.*

¶ 23    While prosecutors can use every legitimate means to bring about a just conviction, they have a duty to avoid using improper methods designed to obtain an unjust result. *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005). We evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury. *People v. McMinn*, 2013 COA 94, ¶ 60.

¶ 24    If the defendant objected at trial, we review the trial court's ruling for a "gross abuse of discretion resulting in prejudice and a

denial of justice." *People v. Camarigg*, 2017 COA 115M, ¶ 39 (quoting *People v. Garner*, 2015 COA 175, ¶ 26). If the defendant failed to object at trial, we review for plain error. *Id.* "To constitute plain error, prosecutorial misconduct must be flagrant or glaringly or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *McMinn*, ¶ 58.

### B.   "I Believe That I Have Proven"

¶ 25   During closing argument, the prosecutor told the jury,

> This is your opportunity to — dig into the facts that you heard, into the physical documents you have and then, look at the law that he just provided you and make sure that I met my burden. If I did not meet my burden, you will find Eric Dockins not guilty. That's your duty as a juror; however, I'm up here and *I believe that I have proven* —

(Emphasis added.) Defense counsel objected, arguing that "[c]ounsel's belief is irrelevant," and the district court sustained the objection.

¶ 26   The prosecutor rephrased, "I have met my burden beyond a reasonable doubt of the two counts that I charged [Dockins] with." But because defense counsel did not object to the prosecutor's

12

rephrased statement, we will not consider this alleged error further. *See People v. Alemayehu*, 2021 COA 69, ¶ 101 (declining to consider alleged error where prosecutor rephrased the comment and defense counsel requested no further relief); *People v. Douglas*, 2012 COA 57, ¶ 65 (declining to consider alleged error where court sustained objection and defense counsel requested no further relief).

## C.    "Uncontested Facts"

¶ 27    During closing argument, the prosecutor told the jury, "There are several uncontested facts here.  The first one is that [Dockins] does not have a driver's license and he hasn't for the last . . . seven years."  Counsel objected to the prosecutor's "characterization of uncontested facts."  The court viewed "this as [the prosecutor's] argument that there's uncontested facts" but reminded the jurors they were to "determine what the facts are."

¶ 28    The prosecutor rephrased, "I believe it's uncontested, based upon Exhibit 6 and Exhibit 8."  The prosecutor summarized Exhibit 8, which was a video of Dockins twice admitting he did not have a license, and Exhibit 6, which was Dockins' Department of Motor Vehicle (DMV) record, reflecting that his license had been revoked

since 2015. Then the prosecutor stated, "So, that's the basis for why I believe this is uncontested."

¶ 29 Dockins contends that these comments improperly conveyed the prosecutor's personal opinion to the jury. True, a prosecutor's expression of personal opinion or belief as to the guilt of the defendant or the truth or falsity of witness testimony is improper. *Domingo-Gomez*, 125 P.3d at 1049. But when viewed in context, the prosecutor's statements did not reveal her personal opinion about the evidence but instead amounted to an argument that certain facts should be viewed by the jury as uncontested based on the admitted evidence. Because the statements were properly tethered to the evidence — indeed, the prosecutor walked the jury through the two exhibits on which she based her argument — we do not see any impropriety. *See People v. Rogers*, 220 P.3d 931, 938 (Colo. App. 2008) (a prosecutor's statements about what "the People believe" or what "we believe" had been proved, when tied to specific evidence, was not improper), *overruled in part on other grounds by Garcia v. People*, 2022 CO 6.

## D. "I Charged Mr. Dockins"

¶ 30 During closing argument, the prosecutor stated, "You're here because I charged Mr. Dockins with two counts: [v]ehicular eluding and [d]riving [u]nder [r]estraint." Defense counsel did not object. The prosecutor then reviewed the elements of each charge with the jury. Similarly, after discussing the evidence that was presented, the prosecutor said, "I charged [Dockins] with [v]ehicular [e]luding and [d]riving [u]nder [r]estraint. I've met each and every one of those elements beyond a reasonable doubt and I am standing up here asking that you find him guilty." Again, defense counsel did not object.

¶ 31 Dockins contends that by "[r]epeatedly noting that she, personally, charged Mr. Dockins with the crimes," the prosecutor insinuated she had more knowledge about the case than did the jury. Although a prosecutor "cannot intimate that she has personal knowledge of evidence unknown to the jury," *Domingo-Gomez*, 125 P.3d at 1049, we discern no reversible misconduct here, *see People v. Sauser*, 2020 COA 174, ¶ 80. Although the prosecutor's comments irrelevantly informed the jury that she was the prosecutor who charged Dockins, they did not suggest that the case

15

had gone through a special screening process or imply that additional evidence supporting guilt existed. *See Domingo-Gomez*, 125 P.3d at 1049. The jury knew Dockins had been charged with and was being tried for the two crimes the prosecutor identified. And the prosecutor's statements bookended her discussion of the elements of each offense and the evidence that was presented to prove each element. *See Rogers*, 220 P.3d at 938. Under the totality of the circumstances, we conclude that the statements were not flagrant or glaringly or tremendously improper. *See McMinn*, ¶ 58; *People v. Walters*, 148 P.3d 331, 334 (Colo. App. 2006) ("During closing argument, a prosecutor has wide latitude and may refer to the strength and significance of the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence.").

### E. "I Am Telling You It Was Dockins"

¶ 32    The prosecutor made two almost identical statements during opening statement and closing argument. During opening, the prosecutor told the jury,

> [T]his entire case will come down [to], was it Eric Dockins on that motorcycle? *And at the end of this trial, I will tell you that yes, it was*

> and I believe that you should find [Dockins]
> guilty of [e]luding Officer Castillo that night
> and [d]riving [u]nder [r]estraint, because he did
> not have an active driver's license at that time.

(Emphasis added.) Defense counsel did not object.

¶ 33     Similarly, during closing argument, the prosecutor stated, "What's in dispute here is that it was Eric Dockins. And I am up here telling you that it was Eric Dockins . . . ." This time, defense counsel objected. The court overruled the objection but reminded the jurors that closing arguments are not evidence. The prosecutor reiterated, "The only thing that's in dispute here is the Defendant's identity," and then recounted the evidence that had been presented to establish Dockins' identity.

¶ 34     Dockins contends that the prosecutor's statements improperly conveyed her personal opinion that Dockins was guilty. We do not endorse the prosecutor's language, which certainly risked conveying to the jury her personal opinion that Dockins was the person on the motorcycle who committed the charged offenses. *See Domingo-Gomez*, 125 P.3d at 1049. But we see neither a gross abuse of discretion by the district court in overruling defense counsel's objection during closing argument nor flagrant or

17

glaringly or tremendously improper conduct by the prosecutor in opening statement. *See Camarigg*, ¶ 39; *McMinn*, ¶ 58.

¶ 35     Prosecutors have "wide latitude in the language and presentation style used" to convey their arguments. *Domingo-Gomez*, 125 P.3d at 1048. And "because arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful." *People v. Samson*, 2012 COA 167, ¶ 30. Although inartful, we view the prosecutor's comments as oratorical embellishments meant to convey to the jury that the evidence of identity could lead to only one conclusion — that Dockins was the offender — rather than an invitation for the jury to jettison its factfinding responsibility and rely on the prosecutor's opinion to convict. *See People v. Carter*, 2015 COA 24M-2, ¶ 70 ("A prosecutor may ordinarily 'employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance.'") (citation omitted). In the context of the argument as a whole, and in light of the strong evidence of identity before the jury, we perceive no error. *See id.* at ¶ 71.

## IV.  Dockins' DMV Record

¶ 36     Dockins contends that the district court erred by admitting evidence of a prior DUR conviction contained in Dockins' DMV record as other act evidence under CRE 404(b).  We disagree.

### A.  Driving Under Restraint

¶ 37     A person commits DUR if they drive a motor vehicle on any highway of the state with the knowledge that their license or privilege to drive is under restraint.  § 42-2-138(1)(a), C.R.S. 2024.  "Knowledge" is "actual knowledge of any restraint from whatever source or knowledge of circumstances sufficient to cause a reasonable person to be aware that such person's license or privilege to drive was under restraint."  § 42-2-138(4)(a).  "Restraint" is "any denial, revocation, or suspension of a person's license or privilege to drive a motor vehicle in this state or another state."  § 42-2-138(4)(b).

### B.  Applicable Law and Standard of Review

¶ 38     CRE 404(b) provides that evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character" but may be admissible "for another purpose,

19

such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." CRE 404(b)(1)-(2).

¶ 39 Even so, the admissibility of other act evidence must be analyzed under the four-part test set forth in *People v. Spoto*, 795 P.2d 1314 (Colo. 1990). Such evidence is admissible if (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance is independent of the prohibited intermediate inference that the defendant was acting in conformity with his bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Id.* at 1318.

¶ 40 A trial court has considerable discretion when determining the admissibility of evidence. *People v. McFee*, 2016 COA 97, ¶ 17. We review a court's evidentiary ruling for an abuse of discretion. *People v. Sims*, 2019 COA 66, ¶ 44. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law. *Id.*

## C. Additional Background

¶ 41    Before trial, the prosecution provided written notice of its intent to introduce Dockins' DMV record under CRE 404(b) to establish that Dockins' license had been under restraint since 2015 and that he was aware of that fact. Defense counsel filed a written objection arguing that the DMV record contained "mostly irrelevant and prejudicial information."

¶ 42    During a hearing on the motion, the prosecutor offered to redact significant portions of the DMV record but did not agree to redact the reason for a 2016 conviction: "Drove (Motor/Off-Highway) Vehicle When License Under Restraint (Suspended)." The prosecutor argued that the information was relevant to establish that Dockins knew his license was restrained, not just that he did not have one. Defense counsel objected because the conviction description showed the jury that Dockins had previously been convicted of the crime he was charged with in this case and was not necessary because it was cumulative of other evidence of Dockins' knowledge. The court ruled that "given the redactions that have occurred and the relevance of the certified

21

document, the [c]ourt would find that any 401, 403 issues have been resolved through the redactions."

¶ 43    At trial, the prosecutor moved to admit the redacted DMV record based on the court's previous ruling and asked the court to give the jury a limiting instruction.  The court admitted the exhibit and told the jury,

> Now, ladies and gentlemen, you're about to hear or see evidence regarding [Dockins'] driving record.  This evidence is admissible for the particular purpose of demonstrating [Dockins'] identity and that [Dockins] knew his license was revoked.  It may only be used as evidence for the purpose of showing [Dockins'] identity, knowledge and motive.  Such evidence must not be considered for any other purpose and is not admissible to prove the character of [Dockins] in order to show that he acted in conformity with that character.

¶ 44    Officer Castillo then testified that the DMV record (1) contained a photo of Dockins, who was the person the officer saw on the motorcycle; (2) showed that Dockins had been served with notice that his license was under restraint; and (3) reflected that Dockins' license had not been reinstated since it was originally revoked.

¶ 45    There was no testimony about the prior DUR conviction. During closing argument, however, the prosecutor reviewed the DMV record with the jury and explained, "You can also see in the [c]onviction section that there is a prior [d]riving [u]nder [r]estraint conviction and that's to show that Eric Dockins knew he did not have a valid driver's license and that was in fact because he was revoked at the time."

### D. The District Court Did Not Abuse Its Discretion by Admitting Evidence of Dockins' Prior DUR Conviction

¶ 46    Dockins contends that the district court erred by admitting evidence of his prior DUR conviction because it served only to inform the jury that Dockins had been previously convicted of the same crime and to encourage them to convict based on that prior bad act. Dockins further contends that the court's limiting instruction did not mitigate this prejudice. We are not persuaded.

¶ 47    There appears to be little dispute that the first three *Spoto* prongs were met. The evidence related to whether Dockins knew his license was under restraint, which is an essential element of a DUR charge. *See Yusem v. People*, 210 P.3d 458, 464 (Colo. 2009) (the first *Spoto* prong is met if the purpose for which the prior act

evidence is offered is somehow probative of an ultimate or intermediate fact); *People v. Boulden*, 2016 COA 109, ¶ 8 ("Knowledge is an essential element of the crime of driving under restraint."). The evidence made it more likely than not that Dockins knew his license was under restraint. *See Yusem*, 210 P.3d at 464-65 (the second *Spoto* prong is satisfied if "the prior act evidence has *any* tendency to make the existence of the material fact more or less probable than without the evidence"); CRE 401. And the prosecution offered the evidence to prove Dockins' knowledge, which is independent of the inference that Dockins acted in conformity with his bad character. *See People v. Jones*, 2013 CO 59, ¶ 16 (the third *Spoto* prong is satisfied so long as the logically relevant evidence achieves its purpose other than through an impermissible inference); *People v. Snyder*, 874 P.2d 1076, 1080 (Colo. 1994) ("The third prong of the Spoto test does not demand the absence of the inference but merely requires that the proffered evidence be logically relevant independent of that inference."). Accordingly, we conclude that the prior DUR conviction satisfies the first three *Spoto* prongs.

¶ 48    The parties focus on the fourth *Spoto* prong, which asks whether "the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Spoto*, 795 P.2d at 1318; *see* CRE 403. "[U]nfair prejudice within the meaning of [CRE 403] still refers only to 'an undue tendency on the part of the admissible evidence to suggest a decision made on an improper basis' and does not mean prejudice that results from the legitimate probative force of the evidence." *People v. Rath*, 44 P.3d 1033, 1043 (Colo. 2002) (citation omitted). We consider the following factors when analyzing the fourth prong: the importance of the material fact for which the evidence is offered and whether it is disputed, the chain of inferences necessary to establish the material fact, the availability of other proof, and the effectiveness of a limiting instruction. *Vialpando v. People*, 727 P.2d 1090, 1096 (Colo. 1986). "In deference to the trial court's discretion, we must assume the maximum probative value and the minimum unfair prejudice to be given the evidence." *Yusem*, 210 P.3d at 467.

¶ 49    The district court determined that the probative value of the DMV record was not substantially outweighed by the danger of unfair prejudice in light of the redactions that were made to it. But

Dockins contends that the probative value of the prior DUR conviction was "miniscule" because the prior conviction occurred in 2016, and there was a more recent revocation in 2019.[3]  While Dockins concedes that the 2019 revocation was relevant, he asserts that the reason for the 2016 conviction was not.  And even if it was relevant, Dockins argues it was cumulative of the other evidence that was also part of the DMV record.  We are not persuaded.

¶ 50    The material fact for which this evidence was introduced was crucial — indeed, knowledge is an element of the offense that the prosecution was required prove beyond a reasonable doubt.  *See* § 42-2-138(1)(a); *Vialpando*, 727 P.2d at 1096 (we consider "the importance of the fact of consequence for which the evidence is offered"); *Johnson v. People*, 2019 CO 17, ¶ 10 (the prosecution has the burden to "prove every factual element necessary to constitute the crime charged beyond a reasonable doubt") (citation omitted).  Although the primary dispute at trial was identity, Dockins did not admit or stipulate that he knew his license was under restraint at the relevant time.  So the knowledge element remained disputed,

---

[3] We note that Dockins did not raise this specific argument before the district court.

and the prosecution had the burden to prove it. *See Vialpando*, 727 P.2d at 1096 (we consider "whether the fact of consequence for which the evidence is offered is being disputed").

¶ 51 Other portions of the DMV record showed that Dockins' license was under restraint or had not been reinstated since it was last revoked, but that does not establish that Dockins *knew* his license was under restraint. *See Boulden*, ¶ 10 ("Colorado's 'knowledge' requirement limits punishment to 'those who are subjectively aware of circumstances that would lead a responsible driver to realize his license was under restraint and thus not continue to drive.'" (quoting *People v. Ellison*, 14 P.3d 1034, 1039 (Colo. 2000))). Evidence that Dockins had been convicted of driving while his license was under restraint before, combined with evidence that his license had not been reinstated since, was highly probative of the knowledge element. *See id.*; *Vialpando*, 727 P.2d at 1096 (we consider "the strength and length of the chain of inferences necessary to establish the fact of consequence").

¶ 52 By comparison, the other evidence Dockins claims would have satisfied the prosecution's burden was not as clear or compelling. Attached to the DMV record was a "proof of service" form that had

purportedly been served on Dockins while he was in custody in 2016 and that advised him, "[I]t is unlawful for you to operate a motor vehicle on any roadway in Colorado." But the prosecution redacted the "signature of the person served" box, which contained an "x with a circle" next to "In Custody," in order to eliminate any prejudicial reference to the fact that Dockins was in custody at that time. Although Officer Castillo testified that Dockins was given notice, the form does not contain Dockins' signature or otherwise reflect that he received it. Thus, as best we can tell, no other part of the DMV record established Dockins' knowledge that his license was under restraint. *Compare Boulden*, ¶¶ 16-17 (concluding that the knowledge element of the driving under restraint charge was not proven by a driving record indicating notice of the suspension had been mailed with no verification that the defendant received the notice), *with People v. Espinoza*, 195 P.3d 1122, 1128 (Colo. App. 2008) (concluding that "the jury could infer that defendant drove with knowledge that his license had been revoked because he was a habitual traffic offender").

¶ 53    Moreover, the court gave an appropriate limiting instruction to cabin the jury's use of the evidence before it was admitted. *See*

§ 16-10-301(4)(d), C.R.S. 2024 (requiring a limiting instruction); *Vialpando*, 727 P.2d at 1096 (we consider "the potential effectiveness of a limiting instruction in the event of admission"). We are not persuaded by Dockins' argument that the instruction was ineffective because it allowed the jury to use the evidence for several purposes other than knowledge — including identity. During trial, Officer Castillo testified that the person in the photo contained in the DMV record was Dockins and was the same individual he initially saw standing in the driveway next to the motorcycle and later saw driving away on the motorcycle. So "identity" was a proper purpose for which the evidence was admitted. And defense counsel did not object to using the DMV record to establish identity in this way or to using a single limiting instruction for the entire DMV record.

¶ 54 Affording the evidence its maximum probative value and assuming its minimum unfair prejudice, we conclude that the district court did not abuse its discretion by admitting evidence of the prior DUR conviction. *See Yusem*, 210 P.3d at 467.

## V. Cumulative Error

¶ 55   Dockins contends that, even if the district court's alleged individual errors do not require reversal, their cumulative prejudicial impact does.  Because we found no errors, Dockins' contention necessarily fails.  *See People v. Strock*, 252 P.3d 1148, 1155 (Colo. App. 2010) ("Cumulative error applies only if the trial court committed numerous errors; a defendant's mere assertions of error are insufficient to warrant reversal.") (citation omitted).

## VI. Disposition

¶ 56   The judgment is affirmed.

JUDGE WELLING and JUDGE MOULTRIE concur.